UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

C. S.,

       Plaintiff,

v.                    Case No:  2:20-cv-630-JES-MRM

HOLISTIC HEALTH HEALING,
INC.,

       Defendant.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on defendant's Motion to Dismiss, Motion to Strike, or for a More Definite Statement (Doc. #9) filed on September 28, 2020.  Plaintiff filed an opposition (Doc. #19) on November 2, 2020.  For the reasons set forth below, the motions are denied.

**I.**

The origins of this case began on October 30, 2019, when plaintiff and another alleged victim of sex trafficking filed a case in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida.  See <u>S.Y. et al v. Naples Hotel Co. et al</u>, Case No. 2:20-cv-118 (Doc. #1, p. 3).  On December 31, 2019, the plaintiffs filed a First Amended Complaint which asserted ten claims against over forty defendants.  <u>Id.</u> at (Doc. #1, pp. 2-4).  The case was removed to federal court in February 2020. <u>Id.</u> at (Doc. #1).  On April 15, 2020, the plaintiffs filed a Second

Amended Complaint. Id. at (Doc. #85). On August 5, 2020, the undersigned denied various motions to dismiss, but determined severance of the parties was appropriate. S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020). Following the Court's severance order, plaintiff and the other alleged victim filed nearly thirty new actions against various defendants, including this case.

The Complaint (Doc. #1) in this case was filed on August 19, 2020, and alleges that plaintiff C.S., a resident of Collier County, Florida, was a victim of continuous sex trafficking at a Conty's Motel, owned, operated, supervised, and controlled by defendant Holistic Health Healing, Inc., in Naples, Florida between 2013 and 2016. (Id. ¶¶ 2, 1, 22-24.)

The Complaint alleges the following six claims: (1) violation of the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 18 U.S.C. § 1595; (2) violation of the Florida RICO statute, § 772.104, Florida Statutes; (3) premise liability; (4) negligent hiring, supervision, and retention; (5) negligent rescue; and (6) aiding and abetting, harboring, confining, coercion, and criminal enterprise. (Id. pp. 28-42.)

**II.**

Defendant's motion seeks to have the Court strike several allegations in the Complaint as well as dismiss the majority of

- 2 -

the claims as insufficiently pled.  The Court will address each of these arguments in turn.

## A. Redundant, Irrelevant and Scandalous Allegations

Defendant argues that the Complaint contains numerous allegations that are redundant, irrelevant, and scandalous, and therefore should be struck.  (Doc. #9, pp. 4-6.)  Pursuant to Rule 12(f), a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter" within the pleadings.  The Court enjoys broad discretion in determining whether to grant or deny a motion to strike.  Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F. Supp. 992, 1000 (M.D. Fla. 1976).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Hutchings v. Fed. Ins. Co., 6:08-cv-305-ORL-19KRS, 2008 WL 4186994, *2 (M.D. Fla. Sept. 8, 2008) (marks and citation omitted). It is not intended to "procure the dismissal of all or part of a complaint."  Id.  A motion to strike is a drastic remedy and is disfavored by the courts.  Schmidt v. Life Ins. Co. of N. Am., 289 F.R.D. 357, 358 (M.D. Fla. 2012).  Therefore, a motion to strike should be granted only if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."  Id.

Defendant moves to strike ten paragraphs in the Complaint, arguing the allegations therein contain (1) irrelevant "puffing"

about sex trafficking and its alleged relationship with the hotel industry, and (2) immaterial and scandalous matters regarding defendant's knowledge of the tactics of sex traffickers.   (Doc. #10, pp. 4-6.)  Having reviewed the allegations at issue (Doc. #1, ¶¶ 3-5, 39-41, 62-64, 127), the Court declines to strike them.  The majority[1] of the allegations relate to defendant's knowledge of sex trafficking, the failure to prevent it, and the motivation for doing so.  Such allegations are relevant to the type of claims plaintiff asserts, S.Y., 476 F. Supp. 3d at 1259 n.5, and the Court does not find any to be overly redundant or unduly prejudicial.  Accordingly, the request to strike the allegations is denied.

**B. Failure to State a Claim**

Defendant argues Counts Two through Six should be dismissed due to plaintiff's failure to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   This obligation "requires more than labels and

---

[1] In the third paragraph, the Complaint explains why human sex trafficking is prevalent at hotels throughout the United States and globally.  (Doc. #1, ¶ 3.)  While such an allegation may be irrelevant, see S.Y., 476 F. Supp. 3d at 1259 ("[T]he Court agrees that those [allegations] regarding sex trafficking in general and its relationship with the hospitality industry should be stricken as irrelevant."), the Court cannot say that this single allegation causes sufficient prejudice to justify the "drastic" and "disfavored" remedy being sought.  Schmidt, 289 F.R.D. at 358.

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**(1)  Florida RICO Violation**

Count Two of the Complaint asserts a claim under Florida's civil RICO statute, section 772.104, Florida Statutes.  (Doc. #1, p. 29.)  To state a claim under the statute, plaintiff must allege plausible facts showing "(1) conduct or participation in an enterprise through (2) a pattern of [criminal] activity."  Horace-Manasse v. Wells Fargo Bank, N.A., 521 F. App'x 782, 784 (11th Cir. 2013) (quoting Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003)).[2]

Defendant argues plaintiff has insufficiently pled the enterprise element of her claim.  (Doc. #9, pp. 7-11.)  Florida's RICO statute defines enterprise to include a "group of individuals associated in fact although not a legal entity."  § 772.102(3), Fla. Stat.  "[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose."  Boyle v. United States, 556 U.S. 938, 948 (2009).  To sufficiently plead such an enterprise, "a plaintiff must allege that a group of persons shares three structural features: (1) a purpose, (2)

---

[2] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act.  Therefore, federal decisions should be accorded great weight."  O'Malley v. St. Thomas Univ., Inc., 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); see also Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1137 (M.D. Fla. 2018) ("[T]he Eleventh Circuit applies federal RICO analysis equally to Florida RICO claims.").

relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020) (marks and citations omitted).  Defendant argues the Complaint fails to sufficiently allege it associated with the traffickers for a "common purpose."  (Doc. #9, pp. 7-9.)

"The purpose prong contemplates 'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." Cisneros, 972 F.3d at 1211 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). "An abstract common purpose, such as a generally shared interest in making money, will not suffice.  Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." Id. (citations omitted).

Here, the Complaint alleges defendant "associated with the Plaintiff C.S.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme." (Doc. #1, ¶ 140.)  Plaintiff asserts this "association-in-fact" constitutes an "enterprise" under Florida's RICO statute, and that defendant conducted or participated in the enterprise through a pattern of criminal activity, "related by their common purpose to profit off an institutionalized sex trafficking scheme."  (Id. ¶¶ 140-141,

145.)   The Court finds these allegations sufficient to allege defendant and the traffickers "shared the purpose of enriching themselves through a particular criminal course of conduct." Cisneros, 972 F.3d at 1211; see also United States v. Church, 955 F.2d 688, 697-98 (11th Cir. 1992) (noting that "an association's devotion to 'making money from repeated criminal activity' . . . demonstrates an enterprise's 'common purpose of engaging in a course of conduct'" (citations omitted)); Burgese v. Starwood Hotel & Resorts Worldwide, Inc., 101 F. Supp. 3d 414, 424 (D. N.J. 2015) (on motion to dismiss Florida RICO claim, court found that "Plaintiff's Amended Complaint can be read to allege a 'common purpose' of furthering an institutionalized prostitution scheme to increase profits for the participants," and that "[t]hese allegations, though thin, are sufficient for purposes of this motion").

Defendant also argues that the Complaint fails to sufficiently plead the "pattern of criminal activity" element. (Doc. #9, p. 10.)  As previously stated, "[i]n order to state a civil cause of action under the Florida RICO Act, a plaintiff must allege a pattern of criminal activity." Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 682 (11th Cir. 2014) (citing §§ 772.103-104, Fla. Stat.).  The statute's definition of "criminal activity" provides "that a particular state law crime can serve as the predicate act for a RICO claim if it is 'chargeable by

indictment or information' and falls within a series of specified provisions." Id. (citing § 772.102(1)(a), Fla. Stat.).  "In order to establish a pattern of criminal activity, the plaintiff must allege two or more criminal acts 'that have the same or similar intents, results, accomplices, victims, or methods of commission' that occurred within a five-year time span." Id. at 680 (citing § 772.102(4), Fla. Stat.).

Plaintiff's Florida RICO claim is predicated on the commission of human trafficking crimes in violation of section 787.06, Florida Statutes.  (Doc. #1, ¶¶ 142, 144); see also § 772.102(1)(a)15., Fla. Stat. (listing "human trafficking" under Chapter 787 among the types of "criminal activity" covered by the Florida RICO statute).  This provision provides various punishments for "[a]ny person who knowingly, or in reckless disregard of the facts, engages in human trafficking, or attempts to engage in human trafficking, or benefits financially by receiving anything of value from participation in a venture that has subjected a person to human trafficking."  § 787.06(3), Fla. Stat.

Defendant argues the RICO claim fails to allege a pattern of criminal activity because the Complaint "provides a several year span and no specific allegations of when the predicate acts allegedly occurred," making it "impossible to discern if [defendant] committed two or more predicate acts in the required

timeframe."   (Doc. #9, p. 10.)   The Court disagrees.   The Complaint alleges plaintiff was trafficked on a "regular, consistent and/or repeated basis" at various hotels in Naples, Florida, and at the Conty's Motel from approximately 2015 to 2016. (Doc. #1, ¶ 68.)   The Complaint describes how the sex trafficking occurred at the Conty's Motel and the "routine conduct" taking place as a result, as well as alleges defendant's employees participated in the trafficking, made promises to the traffickers not to interfere with it, and knowingly turned a blind eye to it. (Id. ¶¶ 75, 76, 78, 83.)   Viewing the allegations in the light most favorable to plaintiff, the Court finds this sufficient to allege two or more predicate acts within the applicable timeframe.

Finally, defendant argues the Complaint contains insufficient allegations regarding causation.   (Doc. #9, pp. 10-11.)   Under the Florida RICO statute, a plaintiff must demonstrate that their injuries were proximately caused by the RICO violations.   See Bortell v. White Mountains Ins. Grp., Ltd., 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009).   "A wrongful act is a proximate cause if it is a substantive factor in the sequence of responsible causation." Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1307 (11th Cir. 2003) (marks and citation omitted).   Furthermore, a plaintiff "must show a 'direct relation between the injury asserted and the injurious conduct alleged.'"   Id. (quoting Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992)).   "Indirect

harm is insufficient to sustain a cause of action under the RICO statutes." Bortell, 2 So. 3d at 1047; see also O'Malley, 599 So. 2d at 1000 ("[I]ndirect injuries, that is, injuries sustained not as a direct result of predicate acts . . . will not allow recovery under Florida RICO.").

Defendant argues that the Complaint contains no plausible allegations that it engaged in any conduct that was the proximate cause of plaintiff's alleged injuries.   (Doc. #9, p. 11.) Defendant also notes that the Complaint "is void of any allegation that that [sic] [defendant] had specific knowledge of Plaintiff." (Id.)  Plaintiff responds that she has sufficiently pled proximate cause and consequential damages by alleging she "was at the Conty's Motel as part of the sexual trafficking scheme and her injuries were caused by and in furtherance of the sexual trafficking scheme."  (Doc. #19, pp. 12-13.)  Having reviewed the allegations in the Complaint, the Court agrees with plaintiff.[3]

---

[3] Unlike the federal RICO statute, "the Florida statute does not expressly limit recovery . . . to persons who have suffered injury to their 'business or property,' language which has been interpreted to exclude economic losses arising out of personal injuries."  Berber v. Wells Fargo Bank, N.A., 2018 WL 10436236, *3 (S.D. Fla. May 24, 2018); see also Townsend v. City of Miami, 2007 WL 9710944, *2 (S.D. Fla. Nov. 7, 2007) ("Unlike its federal counterpart, the Florida RICO statute is not limited to 'business or property' injuries. . . . The plain language of the Florida statute does not exclude pecuniary losses resulting from personal injury.  Accordingly, Mr. Townsend can sue under the Florida RICO statute for his loss of employment and personal injuries.").

The Complaint alleges defendant "was on notice of repeated incidents of sex trafficking occurring on its hotel premises," and yet "failed to take the necessary actions to prevent sex trafficking from taking place." (Doc. #1, ¶ 44.) The Complaint also alleges numerous ways in which defendant could have identified and prevented the sex trafficking from occurring. (Id. ¶¶ 46-64.) Finally, the Complaint alleges the "acts and omissions of [defendant] served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization" of plaintiff "for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking." (Id. ¶ 106.) "[B]y knowingly, or with reckless disregard, repeatedly allowing sex trafficking to occur on its premises between 2013 and 2016," defendant's "acts have yielded consistent results and caused economic, physical, and psychological injuries" to plaintiff. (Id. ¶¶ 143, 146.)

The Court finds these allegations sufficient to plead a "direct relation between the injury asserted and the injurious conduct alleged," Holmes, 503 U.S. at 268, and therefore the Complaint adequately pleads proximate cause. See Burgese, 101 F. Supp. 3d at 422 (finding allegations of physical injury and mental anguish "cognizable under the Florida RICO Act" and sufficient to survive a motion to dismiss); cf. Berber, 2018 WL 10436236, *5 ("Because Plaintiffs' asserted injuries arise from a set of actions

entirely distinct form [sic] the alleged predicate RICO violations, proximate cause is lacking as a matter of law.").

**(2)  Premise Liability**

Count Three of the Complaint asserts a claim of premise liability (Doc. #1, p. 31), which is a form of negligence action. "The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition." Lisanti v. City of Port Richey, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). Plaintiff alleges defendant owed her a variety of duties, that it breached these duties, and that as a direct and proximate result, she suffered bodily injury. (Doc. #1, ¶¶ 152-169.) Plaintiff also alleges defendant had actual or constructive knowledge of sex trafficking occurring on the premises, that it knew or should have known the risk of such criminal conduct taking place would be unreasonably high without appropriate precautions, and that it had actual or constructive knowledge of the dangerous conditions plaintiff was in. (Id. ¶¶ 160-162.)

Defendant argues the premise liability claim is insufficiently pled, first challenging the duty element of the claim. (Doc. #9, pp. 11-13.) Under Florida law, a property owner generally owes two duties to an invitee:

(1) the duty to use reasonable care in maintaining the property in a reasonably safe condition; and (2) the

> duty to warn of latent or concealed dangers which are or
> should be known to the owner and which are unknown to
> the invitee and cannot be discovered through the
> exercise of due care.

Dampier v. Morgan Tire & Auto, LLC, 82 So. 3d 204, 206 (5th DCA 2012).  Defendant argues that it did not have a duty to warn plaintiff of the danger of sex trafficking because plaintiff was aware of the trafficking herself.  (Doc. #9, p. 13); see also Emmons v. Baptist Hosp., 478 So. 2d 440, 442 (Fla. 1st DCA 1985) ("A prerequisite to the imposition upon the landowner of a duty to warn is that the defendant's knowledge of the danger must be superior to that of the business invitee.").  However, plaintiff's premise liability claim is not based upon a duty to warn, but rather a duty to maintain the property in a reasonably safe condition.  (Doc. #1, ¶¶ 155-159.)  Accordingly, defendant's argument as it relates to a duty to warn is irrelevant.  See Dampier, 82 So. 3d at 206 ("The open and obvious nature of a hazard may discharge a landowner's duty to warn, but it does not discharge the landowner's duty to maintain the property in a reasonably safe condition.").

Next, defendant argues there could be no duty to protect plaintiff from the criminal conduct of third parties because such conduct was not foreseeable.  (Doc. #9, p. 14.)  The Court disagrees with this argument as well.

"Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition.

This includes the duty to protect customers from criminal attacks that are reasonably foreseeable." Banosmoreno v. Walgreen Co., 299 F. App'x 912, 913 (11th Cir. 2008) (citations omitted).

> Foreseeability can be shown by two alternative means. First, a plaintiff may demonstrate that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron. Second, a plaintiff can show that a proprietor knew or should have known of the dangerous propensities of a particular patron.

Id. (marks, citations, and footnote omitted). Such knowledge must only be pled generally. Fed. R. Civ. P. 9(b).

The Complaint contains sufficient allegations that sex trafficking was occurring at the Conty's Motel and that defendant knew or should have known of it. (Doc. #1, ¶¶ 39-45, 83-93.) The Court finds such allegations sufficient to satisfy the notice pleading requirements.

Finally, defendant argues the premise liability claim fails because "Plaintiff cannot establish a causal link between her purported injuries and [defendant's] purported negligence." (Doc. #9, pp. 14-15.) The Court disagrees. As noted, the Complaint alleges defendant was on notice of the sex trafficking occurring at the Conty's Motel and not only failed to prevent it, but knowingly turned a blind eye to it in exchange for increased profits. The Complaint also alleges that as a result of defendant's actions, plaintiff suffered various injuries and damages. Contrary to defendant's suggestion that plaintiff's

injuries were the result of a "freakish and improbable chain of events," (Doc. #9, p. 15), the Court finds the Complaint sufficiently alleges proximate cause.  Accordingly, the Court denies defendant's request to dismiss the claim as insufficiently pled.

### (3)  Negligent Hiring, Supervision, and Retention

Count Four of the Complaint asserts a claim of negligent hiring, supervision, and retention.  (Doc. #1, p. 35.)  "To state a claim under Florida law for negligent hiring, supervision and/or retention, a plaintiff must establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees."  Clary v. Armor Corr. Health Servs., Inc., 2014 WL 505126, *4 (M.D. Fla. Feb. 7, 2014) (citations omitted).  "Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents."  Id. (citing Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir. 2001)).  "For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer." Id. (citation omitted).

> Accordingly, to state a claim, the plaintiff must allege facts that would establish a nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to the plaintiff. The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage.

Id. (citations omitted).

The Complaint alleges defendant was in control of the hiring, instructing, training, supervising, and terminating of the hotel employees, and that defendant had a duty to make an appropriate investigation of the employees.   (Doc. #1, ¶¶ 175-176.)   The Complaint further alleges that defendant knew or should have known that hotel employees were "allowing criminals to rent rooms for prostitution and drug dealing," "failing to either identify and/or report the human sex trafficking and foreseeable harm" of plaintiff, and "failing to refuse continued lodging services to human sex traffickers."   (Id. ¶¶ 178-180.)   The Complaint concludes that defendant was negligent in its hiring, employment, supervision, and termination decisions regarding the employees, and that the sex trafficking of plaintiff was a foreseeable and direct result.  (Id. ¶¶ 181-185.)

Defendant seeks dismissal of the negligent hiring, supervision, and retention claim based on pleading deficiencies, arguing that the claim fails because the Complaint lacks sufficient factual allegations that defendant was on notice of unfit employees.  (Doc. #9, p. 15); see also Bright v. City of Tampa, 2017 WL 5248450, *8 (M.D. Fla. May 17, 2017) ("When an employer fails to take a corrective action against an employee because the employer had no notice of problems with the employee's fitness, the employer is not liable under Florida law for negligent

supervision or retention."). The Court disagrees. The Complaint sufficiently alleges facts suggesting sex trafficking was occurring at the hotel, that the employees knew of it and failed to prevent it, and that due to its control over the employees, defendant knew or should have known of it. (Doc. #1, ¶¶ 76-97, 173-180.) The Court finds such allegations sufficient at this stage of the proceedings and, accordingly, denies the request to dismiss the negligent hiring, supervision, and retention claim.

### (4) Negligent Rescue

Count Five of the Complaint asserts a claim of negligent rescue. (Doc. #1, p. 37.) The Complaint alleges defendant, as the owner and operator of the Conty's Motel, had a duty to keep the premises safe and prevent foreseeable criminal activity, as well as a duty "to make safe a dangerous condition at the Conty's Motel and to rescue its hotel guests, specifically Plaintiff C.S.., from the peril it created." (Id. ¶¶ 188, 191, 197.) The Complaint alleges that by various acts and omissions, defendant breached these duties and that the continuous sex trafficking of plaintiff was the direct and foreseeable result. (Id. ¶¶ 189, 191, 197-200, 202.) Defendant argues the negligent rescue claim should be dismissed as insufficiently pled. (Doc. #9, pp. 18-19.)

There is no common law duty to rescue a stranger. Estate of Ferguson v. Mascara, 09-14192-CIV-GRAHAM/LYNCH, 2010 WL 11558195, *2 (S.D. Fla. Sept. 7, 2010) (citing Bradberry v. Pinellas Cty.,

789 F.2d 1513, 1516 (11th Cir. 1986)).  "A well-established exception to this rule, however, provides that an innkeeper is 'under an ordinary duty of care to [a guest] after he knows or has reason to know the [guest] is ill or injured." De La Flor v. Ritz-Carlton Hotel Co., L.L.C, 2013 WL 148401, *3 (S.D. Fla. Jan. 14, 2013) (quoting L.A. Fitness, Int'l, LLC v. Mayer, 980 So. 2d 550, 557 (Fla. 4th DCA 2008)); see also Abramson v. Ritz Carlton Hotel Co., LLC, 480 F. App'x 158, 161 (3d Cir. 2012) ("Generally, there is no duty to affirmatively assist an injured person unless a special relationship, such as that between an innkeeper and its guests, exists between the parties." (citation omitted)).

Defendant argues the negligent rescue claim should be dismissed because it is insufficiently pled under the "rescue doctrine."  (Doc. #9, pp. 18-19.)  Under Florida law, the rescue doctrine holds a tortfeasor liable for injuries to a third party who is hurt in attempting to rescue the direct victim of the tortfeasor.  Zivojinovich v. Barner, 525 F.3d 1059, 1070 (11th Cir. 2008) (citation omitted).  "The basic precept of this doctrine 'is that the person who has created a situation of peril for another will be held in law to have caused peril not only to the victim, but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in the rescue attempt.'" Menendez v. W. Gables Rehab. Hosp., LLC, 123 So. 3d 1178, 1181

(Fla. 3d DCA 2013) (quoting N.H. Ins. Co. v. Oliver, 730 So. 2d 700, 702 (Fla. 4th DCA 1999)).

As plaintiff correctly argues in response (Doc. #19, p. 18), the rescue doctrine is not implicated by plaintiff's negligent rescue claim. See Krajcsik v. Ramsey, 2017 WL 3868560, *2 n.4 (D. Md. Sept. 5, 2017) ("The rescue doctrine is related to, but separate from, the affirmative duty to rescue an imperiled party that the courts impose on persons in some situations."). Accordingly, because the rescue doctrine is not applicable, defendant's request for dismissal based on the doctrine is denied.[4]

**(5)  Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise**

Finally, Count Six of the Complaint asserts a claim of aiding and abetting against defendant. (Doc. #1, p. 40.) The Complaint accuses defendant of "aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by [plaintiff's] sex traffickers and 'Johns.'" (Id. ¶ 203.) Defendant argues the claim must be dismissed because (1) it asserts defendant "aided and abetted the criminal act of sex trafficking

---

[4] Defendant also suggests hotels only have a limited duty to render aid to a guest it knew or should have known was ill or injured, and that the Complaint contains no plausible facts to suggest defendant knew plaintiff was in need of aid. (Doc. #9, p. 18.) However, the Court finds the Complaint contains sufficient allegations to satisfy this requirement. (Doc. #1, ¶¶ 84, 85, 198.)

in violation of the TVPRA," and (2) the TVPRA does not provide a cause of action for aiding and abetting.  (Doc. #9, p. 19.)  Having reviewed the allegations in the Complaint and the relevant case law, the Court finds defendant is misinterpreting the claim.

Florida courts have recognized aiding and abetting the commission of a tort as a standalone claim.  See Gilison v. Flagler Bank, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) (aiding and abetting fraud); MP, LLC v. Sterling Holding, LLC, 231 So. 3d 517, 527 (Fla. 3d DCA 2017) (aiding and abetting breach of fiduciary duty).  This Court has previously listed the following elements that must be alleged "to state a claim for aiding and abetting a common law tort" under Florida law: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."  Angell v. Allergan Sales, LLC, 3:18-cv-282-J-34JBT, 3:18-cv-283-J-34JBT, 2019 WL 3958262, *8 (M.D. Fla. Aug. 22, 2019); see also Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012) (applying the above elements to three Florida tort claims).  These cases demonstrate Florida recognizes a common-law claim of aiding and abetting tortious conduct.

Here, the Complaint alleges defendant aided and abetted plaintiff's unlawful harboring, confinement, imprisonment, assault and battery, and to the extent the claim alleges defendant has

actual knowledge[5], the Court finds it sufficient to state a claim. Accordingly, the Court denies defendant's request for dismissal.

**C. More Definite Statement**

Finally, defendant asserts that the Complaint is vague, ambiguous, and fails to provide sufficient information to allow it to formulate a response. (Doc. #9, pp. 19-20.) Defendant requests the Court exercise its discretion and order plaintiff provide a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. (Id.)

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); see also Ramirez v. F.B.I., 8:10-cv-1819-T-23TBM, 2010 WL 5162024, *2 (M.D. Fla. Dec. 14, 2010) ("A Rule 12(e) motion is appropriate if the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]." (marks and citation omitted)).

The Court finds the Complaint is not "so vague or ambiguous" that defendant cannot reasonably prepare a response, and therefore denies the request for a more definite statement under Rule 12(e).

---

[5] "[A]llegations which demonstrate merely constructive knowledge, recklessness or gross negligence cannot satisfy the 'knowledge' element of an aiding and abetting claim under Florida law." Angell, 2019 WL 3958262, *9.

See <u>Ramirez</u>, 2010 WL 5162024, *2 ("The [Rule 12(e)] motion is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." (citation omitted)); <u>Eye Care Int'l, Inc. v. Underhill</u>, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000) (noting that "motions for a more definite statement are not favored in light of the liberal discovery practice," and that "a motion for more definite statement is not to be used as a substitute for discovery"); <u>cf.</u> <u>LeBlanc v. LVNV Funding, LLC</u>, 2019 WL 2492124, *1 (M.D. Fla. June 14, 2019) (granting motion for more definite statement, finding "the Complaint contains no facts" and was "not sufficiently specific to place defendant on notice of the claims against it").

Accordingly, it is hereby

**ORDERED:**

Defendant's Motion to Dismiss, Motion to Strike, or for a More Definite Statement (Doc. #9) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this ___8th___ day of March, 2021.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record